## OLIVER *v.* SIMMES.

Where the ends of justice require it, the court will remand a cause, with leave to the plaintiff to amend his pleadings.

APPEAL by the plaintiff from a judgment of the District Court of Avoyelles, *Farrar*, J. *O. N. Ogden*, H. *Taylor*, and *Swayze*, for the appellant. *Waddell* and *Edelen*, for the defendant. The judgment of the court was pronounced by

SLIDELL, J. In July, 1842, *Simmes* filed his petition to be declared a bankrupt, and, in May, 1843, he obtained, in the usual form, his discharge and certificate, pursuant to the act of Congress of 1841. Among the debts due by him at the time of filing his petition to be declared a bankrupt was a note of *Simmes*, endorsed by *Oliver*, upon which a judgment had been obtained by the holder, *Burgess*, against the maker and endorser. This judgment the endorser was compelled to pay after the discharge of *Simmes*. In 1842, *Simmes* addressed *Oliver* a letter, in which, after informing him that he had just filed his petition to be declared a bankrupt, he observese : "The debt of *McEnery & Ford*, which is unjust, I wish you to avoid if possible. As to the debt due *Burgess*, I *hope*, by another year, to be able to assist you, if not pay it. There is also a note held by Judge *Overton*, for $1,500, endorsed by you and *Griffin*, as security for a note due by me to the Union Bank, which note I have reduced to $921 and renewed, with which you will never be troubled." In February, 1843, before the discharge and certificate were granted, *Simmes* wrote another letter to *Oliver*, in reply to one written by *Oliver*, which latter, however, is not in evidence. In this letter *Simmes* writes as follows : "Your favor came duly to hand, and contents duly noted. I regret my inability to render you the desired aid. My circumstances are familiar to you ; consequently minutiæ would be unnecessary. Suffice it to say, I shall, whenever my means will enable me, pay every farthing you may pay for me. At present, without means, without friends, without resources, could I raise funds I would be the greatest financier," &c. The first letter is written apparently in a very friendly tone. In the second he addresses *Oliver* formally, and concludes in the same formal

manner. The relations of the parties had changed; but whether from the OLIVER
nature of *Oliver's* letter, or from what other cause, does not appear.

SIMMES.

The plaintiff has declared upon the judgment which he had paid as endorser, and a promise to pay after going into bankruptcy, alleging also the ability of *Simmes* to pay. The defendant has pleaded his discharge and certificate. There was no replication, impeaching them for fraud or wilful concealment by him of his property or rights of property contrary to the provisions of the bankrupt act, nor any prior reasonable notice specifying in writing such fraud or concealment.

The question has been noticed at bar, and has received the serious consideration of the court, whether the promise above stated, being made before the certificate was granted, is binding upon the party. It has been urged by the counsel for the defendant that the promise in such case must be unequivocal, and relate to some specific debt; and that, in these essentials, the letters of the defendant are deficient. It has also been a subject of serious deliberation with the court, whether, to give validity to such a promise, is consistent with the true policy of the bankrupt law.

Upon this latter point the grounds of our doubts may be briefly stated. Promises of this kind, although volunteered and purely gratuitous, (which the promise in question may or may not have been,) might be made with the view of inducing a creditor, from whom the bankrupt apprehended opposition, to refrain from resisting his discharge. The motive might exist, and the object be attained, without the possibility of proving it. But the act certainly contemplated a free and fair discussion of the bankrupt's previous conduct, and right to a discharge; and all the creditors would be entitled to the benefit of facts and circumstances which might be within the knowledge of a few. Again, the policy of the law was to relieve the honest and unfortunate debtor from all his liabilities, and restore him to the untrammeled exercise of his future industry; to hold him out to the public as one unembarrassed, and with whom new contracts might be made without the risk of interference from former creditors. Upon that assurance new creditors would be considered as acting. Such are some of the prominent considerations which have created in our minds doubt as to the validity of a promise like this, made before certificate.

Our attention was called by the plaintiff to the cases of *Truman* v. *Fenton*, Cowper, 594, and *Besford* v. *Saunders*, 2 Henry Blackstone, 116. Those cases certainly deserve much consideration, but it must be observed, at the same time, that they have their points of distinction from the case before us. In *Fenton's* case it appeared that the bankrupt had defrauded the plaintiff by drawing him in, on the eve of a bankruptcy, to sell him a large quantity of goods on credit, at a time when he must have known of his own insolvency, and which the plaintiff had not the smallest suspicion of. The consideration of the new promise was the debt thus contracted, and the agreement of the creditor not to prove under the commission, he also giving up the securities he had received from the bankrupt. The debtor gave his promise, in the form of a new note, amounting to little more than half of the real debt, in satisfaction of his whole demand. The proposal first moved from the bankrupt, and was his own voluntary request, without threats or undue influence on the part of the creditor. Lord Mansfield said the defendant was bound. It is true, he also said, that all the bankrupt's debts were due in conscience, and that this was a sufficient consideration, the debts not being extinguished *in foro conscientiæ*, though all legal

<div style="float:left">Oliver<br>v.<br>Simmes.</div>

remedy was gone. Aston, Justice. in the same case, seemed to put his concurrence mainly upon the ground that,the waiver of the right to come in under the commission was a benefit to the rest of the creditors. He also observed that, if a bankrupt could not make himself liable by a new promise the provision in the statute Geo. 2, c. 30, by which *every security* for the payment of any debt due before the party became a bankrupt, as *a consideration to a creditor to sign his certificate*, is made void, would be totally nugatory. No such provision is found in the act of 1841. The case of *Besford* v. *Saunders* has this very essential difference from the one before us, that the bankrupt's promise "to pay when he was able," was made after the certificate.

Although we have stated our doubts, we have not formed conclusively, nor do we express, any opinion as to the validity and effect of *Simmes'* promise. The conclusion to which we have come, to remand this case, renders it not indispensable to decide that question at present; and we have a further reason in the very serious importance of the subject, and the circumstance that the approaching close of the term, and our present limited means of examination, do not permit us to consider it as fully as it deserves.

We have stated thst there was no allegation in the pleadings charging fraud or wilful concealment of property contrary to the provisions of the act, nor prior reasonable notice specifying in writing such fraud or concealment. But the plaintiff's counsel in argument has made these charges, and referred to testimony which was offered at the trial, and not formally excepted to. It appears that a very short time before the bankrupt filed his petition to be declared a bankrupt a judicial sale was made under execution against him. The defendant furnished a list of the property which he desired to be seized, and though it consisted of various objects, such as lands, slaves and an interest in a ferry, he gave a written consent that it should be sold in block, and made the usual waivers. A letter was written to the sheriff by the plaintiff's counsel, authorising him to adjudicate the property to the defendant's brother-in-law for $1,000, if he should bid that sum. The adjudication was made, for that sum. Soon after another sale was made in block, to the same party. The sheriff states that nobody attended at either of these sales, but the party to whom the property was adjudicated. These and several other circumstances detailed in the testimony, particularly the continued possession and apparent control of portions of the property after the sheriff's sale, present a case which justifies the exercise of the discretionary power of this court to remand causes for further investigation. We do not feel at liberty to decide the cause on the case as presented, because the act of Congress expressly requires a formal notice in impeaching a certificate; and the justice of the provision is obvious, that a defendant may not be taken by surprise, and may have a full opportunity to explain or defend his conduct. if it be in his power to do so.

It is therefore decreed that the judgment of the court below be reversed, and that this cause be remanded for a new trial, with leave to the plaintiff to amend his pleadings by impeaching the discharge and certificate of the defendant, and to give notice pursuant to the fourth section of the bankrupt act; the defendant paying the costs of this appeal.